COREY NEWTON,

     Petitioner,

v.                           CASE NO. 8:17-cv-65-T-02CPT

SECRETARY, DEPARTMENT OF
CORRECTIONS,

     Respondent.

_____/

## ORDER

Corey Newton applies for the writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) and challenges the validity of his state convictions for burglary of a dwelling and possession of burglary tools, for which Mr. Newton serves thirty years' imprisonment. In his petition, Mr. Newton alleges a total of seven claims for relief based on ineffective assistance of counsel. (Dkt. 1). The Court ordered Respondent Secretary, Department of Corrections, to show cause why relief sought in the petition should not be granted. (Dkt. 4). Respondent filed a response in opposition to the petition and a copy of the state court record in paper format. (Dkts. 7, 8, 9). Mr. Newton filed a reply. (Dkt. 23). Respondent concedes the petition's timeliness. (Dkt. 7 at 5).

Upon consideration of the petition (Dkt. 1), the response (Dkt. 7), and the

reply (Dkt. 23), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, it is **ORDERED** that the petition is **DENIED**.

### Facts[1]

On the morning of October 10, 2012, law enforcement officers were conducting surveillance on a 2011 white Toyota Corolla. Law enforcement followed the vehicle to a residence later determined to be Mr. Newton's. Officers observed Mr. Newton unload items from the Corolla to his residence. The Corolla went to the victim's residence and backed into the front yard. Officers observed Mr. Newton and two other individuals exit the white Toyota Corolla and approach the front door of the victim's home. Law enforcement established a perimeter around the residence.

Officer Shaw testified that after hearing glass breaking and banging sounds, three black males came out of the house. Mr. Newton and one of the other males fled to a seawall near the home and jumped in the water. Officers apprehended Mr. Newton on a dock.

Officers observed pry marks on the front door of the victim's home. The pry marks were consistent with the use of a screwdriver to open the door. A screwdriver was found on the floorboard of the Corolla. The victim testified that his front door had been damaged and a window broken. The police discovered a firearm in a toilet

---

[1] This factual summary derives from Mr. Newton's initial brief to the Second District Court of Appeal (Exhibit 3) and the record.

in the victim's home. The victim testified that he was away from home during the burglary, that the pry marks were not previously there, and that he did not own the firearm. A television, which had been on a stand, was on the floor by the front door. Jewelry that belonged to the victim's wife was found in a pillowcase in the backyard.

Mr. Newton was initially charged with (1) armed burglary of a dwelling, (2) possession of burglary tools, and (3) resisting an officer without violence. At the outset of the trial, Mr. Newton pled no contest to Count 3. Following a jury trial, Mr. Newton was found guilty of the lesser included offense of burglary of a dwelling on Count 1 and guilty as charged on Count 2. He was adjudicated guilty pursuant to the jury verdict and prior no contest plea and was concurrently sentenced to 30 years in prison as a Habitual Felony Offender (HFO) with 15 mandatory minimum years as a Prison Releasee Reoffender (PRR) on Count 1; five years in prison on Count 2; and time served on Count 3.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to

any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different

4

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of

the doubt' . . .") (citations omitted).

In a *per curiam* decision without written opinion, the state appellate court affirmed Mr. Newton's conviction and sentence. (Exhibit 5, Second District Court of Appeal Order dated April 8, 2015); *see also Newton v. State*, 173 So. 3d 976 (Fla. 2d DCA 2015). On May 28, 2015, Mr. Newton filed a Motion for Post-Conviction Relief pursuant to Rule 3.850(a), Fla. R. Crim. P. (Exhibit 7, Motion for Post-Conviction Relief, at 1–24).[2] Mr. Newton's 3.850 motion was denied on June 23, 2015. (Exhibit 7, Order Denying Defendant's Motion for Postconviction Relief, at 34–44). A notice of appeal of the order denying post-conviction relief was filed July 22, 2015. (Exhibit 8, Second District Court of Appeal Case Docket). No briefs were filed in the post-conviction appeal. *Id.* In another *per curiam* decision without a written opinion the state appellate.court affirmed the lower court's denial of Mr. Newton's Rule 3.850 motion. (Exhibit 9); *see also Newton v. State*, 208 So. 3d 1171 (Fla. 2d DCA 2016). The state appellate court's affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom*

---

[2] Respondent has filed in paper format the Appendix, including the state court record. References to the record are made by Exhibit number and page number. To the extent there are multiple pleadings in each exhibit, the first time the pleading is cited, the Court includes the title of the pleading.

*Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 563 U.S. at 181–82. Mr. Newton bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## Standard for Ineffective Assistance of Counsel

Mr. Newton claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, "[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims*, 155 F.3d at 1305. *Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 (holding "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one"); *see also Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness

claims on either of its two grounds.") (citation omitted). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id. Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Mr. Newton must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Mr. Newton must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Mr. Newton cannot meet his burden merely by

9

showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. ... [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom.*, *Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make *reasonable* investigations or make a *reasonable* decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation ... a court must consider not only the quantum of evidence already known to counsel, but also whether the

known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Mr. Newton must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted); *see also Pinholster*, 563 U.S. at 202 (a petitioner must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA"), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"), *cert. denied*, 134 S. Ct.

191 (2013).

In denying Mr. Newton's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Exhibit 7 at 34). Because the state court rejected the claims based on *Strickland*, Mr. Newton cannot meet the "contrary to" test in Section 2254(d)(1). Mr. Newton instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal petition for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

## Discussion

### I.     Ground One

In ground one, Mr. Newton claims that his trial counsel was ineffective in failing to object to a constitutional double jeopardy violation. (Dkt. 1 at 5). Specifically, he claims that sentencing him under both the habitual felony offender (HFO) statute and the prison releasee re-offender (PRR) statute violated his constitutional right prohibiting double jeopardy. *Id.* Mr. Newton raised this issue in

his motion for post-conviction relief pursuant to Rule 3.850(a), Fla. R. Crim. P.

(Exhibit 7 at 3–5).

In rejecting this argument, the state post-conviction court explained:

> The PRR statute sets a mandatory minimum provision which creates a sentencing floor. *See Cotto v. State*, 139 So. 3d 283 (Fla. 2014). The PRR statute indicates that "nothing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to s. 775.084 [the habitual offender statute] or any other provision of the law." § 775.082(9)(c), Fla. Stat. (2012). In contrast, the HFO provision allows courts to sentence a defendant who qualifies as a[n] HFO to an extended term of imprisonment. *See* § 775.084(1)(a), Fla. Stat. (2012). Concurrent HFO and PRR sentences for the same offense are permissible when the incarceration period of the HFO sentence exceeds the PRR sentence. *See Williams v. State*, 129 So. 3d 453 (Fla. 2d DCA 2014); *Sinclair v. State*, 65 So. 3d 573, 575 (Fla. 3d DCA 2011) (affirming sentence of twenty years as an HFO and concurrent fifteen years as a PRR because "the incarceration period of the HFO sentence exceeds the PRR sentence[]"). Moreover, concurrent HFO and PRR sentences for the same offense do not violate double jeopardy. *Sinclair*, 65 So. 3d at 574.

(Exhibit 7 at 35–36).

The state post-conviction court properly found trial counsel is not deemed ineffective for failing to raise an objection when the objection would have been meritless. Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of *Strickland*, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." *Alvord v.* Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (citation omitted).

Florida law provides that "concurrent HFO and PRR sentences for the same offense are permissible when the incarceration period of the HFO sentence exceeds the PRR sentence." *Johnson v. State*, 927 So. 2d 251, 252 (Fla. 2d DCA 2006). Here, Mr. Newton's 30-year sentence as an HFO exceeded his 15-year mandatory minimum sentence as a PRR. Thus, even if Mr. Newton's trial counsel would have objected to the imposition of the sentence, the objection would have been overruled, and therefore counsel cannot be deemed ineffective. *See Hitchcock v. State*, 991 So. 2d 337, 361 (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to make a meritless objection.") (citation omitted). Because the state post-conviction court, and the state appellate court by its affirmance of the Order denying post-conviction relief, concluded that the trial judge properly applied state law in sentencing Mr. Newton, Mr. Newton establishes neither deficient performance nor resulting prejudice from counsel's alleged error. *Strickland*, 466 U.S. at 691–92. Mr. Newton fails to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. 28 U.S.C. §§ 2254(d)(1), (d)(2).

## II.    Ground Two

In his second ground, Mr. Newton contends that his counsel was ineffective in misadvising him to reject a plea offer. (Dkt. 1 at 7). He states that counsel advised him to not accept a 20-year plea offer from the State. He claims he followed this

advice and proceeded to trial. Because he was ultimately sentenced to 30 years with a 15-year minimum mandatory, a sentence much harsher than the rejected offer, he argues that counsel's poor advice deprived him of his Sixth Amendment right to competent counsel. *Id.* Mr. Newton raised this issue in his 3.850 motion. (Exhibit 7 at 6–8).

In ruling against Mr. Newton on this ground, the state post-conviction court stated as follows:

> The Defendant's claim is refuted by the record. Prior to trial, the Court asked the Defendant if he wanted to make any offers to the State to try and resolve his case. The Defendant indicated that he was unsure, stating that counsel "didn't say anything to me about any offers or nothing." (*See* Exhibit C: Transcript of Jury Trial, pp. 12–13). This statement directly contradicts with the Defendant's claim that counsel advised him to reject a plea offer.
>
> Moreover, the record reflects that the State indicated that it would consider an offer of twenty years' imprisonment. When asked about this offer, the Defendant indicated that he was not interested in that sentence. (*See* Exhibit C at 7–13). Therefore, the Defendant's claim that counsel advised him to reject a plea offer which would have resulted in a lower sentence is without merit. Accordingly, the Defendant fails to establish that counsel was deficient and this claim is denied.

(Exhibit 7 at 37).

The record refutes Mr. Newton's contention that his counsel advised him to not accept a 20-year plea deal. The exchange between Mr. Newton and the trial court prior to the start of trial was as follows:

THE COURT:          You want to proceed to trial. You don't want Mr.

15

|                  |                                                                                                                                                    |
|------------------|----------------------------------------------------------------------------------------------------------------------------------------------------|
|                  | Holloway to try to make any offers to get the case resolved; is that correct?                                                                      |
| THE DEFENDANT:   | I don't know.                                                                                                                                       |
| THE COURT:       | I'm sorry?                                                                                                                                          |
| THE DEFENDANT:   | Well, he didn't say anything to me about any offers or nothing.                                                                                     |
| THE COURT:       | Well, you're facing a Life sentence if you're convicted as charged on the armed burglary. Do you understand that?                                   |
| THE DEFENDANT:   | Yes, sir.                                                                                                                                           |
| THE COURT:       | The State indicated they might have before today perhaps talked to – about something, like, 20 with a 15-year min. man. or something along those lines. But you are not interested in that sentence; is that correct? |
| THE DEFENDANT:   | No, sir.                                                                                                                                            |

(Exhibit 2, Transcript of Jury Trial, Volume I, at 12–13). It appears Mr. Newton

initially indicated to the trial court that a plea offer was not communicated to him.

This would be wholly inconsistent with his position here that he was advised to *reject*

a 20-year plea offer. And while it is true that defense counsel has an obligation to

communicate formal plea offers from the prosecution, *see Missouri. v. Frye*, 566

U.S. 134, 144 (2012), to establish the prejudice prong of the *Strickland* test for

ineffective assistance of counsel, a defendant must show "the outcome of the plea

process would have been different with competent advice." *See Lafler v. Cooper*,

566 U.S. 156, 163 (2012). The record reflects that the trial court discussed the

possibility of a 20-year plea offer with Mr. Newton, and he was not interested in that sentence. Thus, even if the plea offer was not communicated by counsel, it was communicated by the trial court, and Mr. Newton rejected it. Accordingly, Mr. Newton fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this ground of ineffective assistance of counsel. 28 U.S.C. §§ 2254(d)(1), (d)(2).

## III. Ground Three

Mr. Newton argues that his trial counsel rendered ineffective assistance by failing to object to the trial court instructing the jury on the laws of principals where the State's charging Information did not charge him as a "principal." (Dkt. 1 at 8). Because he was not charged as a principal in the felony information, Mr. Newton urges that the trial court should not have given a jury instruction on the law of principals.[3] Mr. Newton raised this issue in his 3.850 motion. (Exhibit 7 at 9–12). The post-conviction court rejected the argument, stating:

The Defendant fails to establish that counsel was deficient. Under

---

[3] In charging the jury, the trial court gave the following instruction:
The Law of Principals.
If the Defendant helped another person or persons commit or attempt to commit a crime, the Defendant is a principal and must be treated as if he had done all of the things the other person did or persons did, if the Defendant had a conscious intent the criminal act be done;
And the Defendant did some act or said some word which was intended to and which did insight (sic), cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime.
To be a principal, the Defendant does not have to be present when the crime is committed or attempted.
(Exhibit 2 at 390–91).

Florida law, a person who is charged on an information with commission of a crime "may be convicted on proof that she aided or abetted in the commission of such crime." *State v. Larzelere*, 979 So. 2d 195, 215 (Fla. 2008) (citing *State v. Roby*, 246 So. 2d 566, 571 (Fla. 1971)). There is no absolute requirement that the principal statute be charged on the information in order to have the jury instructed on the principal theory; rather, such an instruction may be given upon the State presenting evidence that the accused aided or abetted in the commission of the charged crime. *Id.*; *see cf. Hampton v. State*, 336 So. 2d 378 (Fla. 1st DCA 1976) (holding that it is immaterial whether the information alleges that defendant committed the crime or was merely aiding and abetting in its commission, as long as proof establishes that he was guilty of either one of the acts proscribed by statute); *Watkins v. State*, 826 So. 2d 471, 474 (Fla. 1st DCA 2002) (holding that if an information charges a defendant with a substantive crime and the proof establishes only that he was feloniously present, aiding and abetting in the commission of the crime, a verdict of guilty as charged should be sustained).

As noted above, there is no requirement that a principal be charged in the information, as long as the State presents evidence that the Defendant aided or abetted in the crime. Here, the State presented extensive evidence of the Defendant's involvement in the crime. A surveillance unit followed the Defendant and other co-defendants in the white Toyota Corolla they were driving. The car stopped at an unknown residence, later determined to be the Defendant's house, and the Defendant was seen exiting and re-entering the white car while wearing a white t-shirt and black shorts. The white Toyota was followed to the scene of the crime. The record reflects that three black males entered the residence. The Defendant was identified by several officers after fleeing from the back window of the residence and was subsequently apprehended while wearing a white t-shirt and black shorts. The record also reflects that physical evidence was obtained or observed at the scene, including a broken window at the back of the house, a hand gun in the toilet, a screwdriver which was found in the white car, several pry marks on the front door of the residence consistent with a screwdriver, TVs that were found on the floor near the front door, and a pillowcase of jewelry that was recovered in the backyard. Therefore, the State presented extensive

evidence that the Defendant aided and abetted in the crime.

> In addition, counsel discussed the fact that the principal wasn't
> charged in the information and the Court indicated that it did not have
> to be. As such, any objection to the principal instruction on this basis
> would not have been sustained. *See Hitchcock*, 991 So. 2d at 361
> (Fla. 2008) ("Counsel cannot be deemed ineffective for failing to
> make a meritless objection.").

(Exhibit 7 at 37–39) (citations omitted).

The post-conviction court correctly observed that, under Florida law, Mr. Newton did not need to be charged as a principal for the jury to be instructed on the principal theory. "[I]t has long been the law of this state that it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding and abetting in its commission, as long as the proof establishes that he was guilty of either one of the acts prescribed by the statute." *Hampton*, 336 So. 2d at 380 n.9 (citation omitted). The facts cited in the court's ruling demonstrate that the State presented ample evidence as to Mr. Newton's involvement in commission of the crime, and a review of the trial testimony shows the facts relied upon by the post-conviction court are supported by the record. *See* Exhibit 2, Transcript of Trial Proceedings, at 166–76, 190–94, 196–97, 199, 216–21, 231–33, 248–50, 262, 268–69, 277, 285–88, 303–05.

A review of the transcript reveals that counsel did inquire of the trial court on this issue:

MR. HOLLOWAY:     Let me ask a question completely separate, tangential

thing. Does the principal statute need to be pled in the Information?

THE COURT:              No.

(Exhibit 1, Transcript of Trial Proceedings, at 322). Notwithstanding this exchange, Mr. Newton complains that defense counsel should have objected to the jury instruction regarding the law of principals. To show that counsel rendered ineffective assistance by not objecting to a jury instruction, Mr. Newton must demonstrate that (1) the instruction was improper, (2) a reasonably competent attorney would have objected to the instruction, and (3) the failure to object prejudiced him. *See Daugherty v.* Dugger, 839 F.2d 1426, 1428 (11th Cir. 1988). Mr. Newton fails to satisfy these requirements. As discussed above, instructing the jury on the law of principals is not improper even though such charge was not included in the information. Thus, any such objection, even if made, would have been overruled as meritless. Accordingly, counsel cannot be deemed ineffective on this basis. *See Hitchcock*, 991 So. 2d at 361. Mr. Newton fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. §§ 2254(d)(1), (d)(2).

## IV.   Ground Four

Mr. Newton contends that trial counsel was ineffective because counsel advised Mr. Newton he should not testify on his own behalf. (Dkt. 1 at 10).

20

Specifically, he claims that counsel told him that if he testified, the total substance of his prior convictions could be introduced by the State via impeachment. Mr. Newton asserts this advice was erroneous and deprived him of his rights. This issue was raised by Mr. Newton in his motion pursuant to Rule 3.850. (Exhibit 7 at 12–15). In rejecting the argument, the post-conviction court stated:

> The Defendant fails to establish that counsel was deficient. The Florida Evidence Code allows for a witness to be impeached for a prior conviction if the crime was punishable by death or imprisonment in excess of one year, or if the crime involved dishonesty or a false statement regardless of the punishment, unless certain exceptions are met. § 90.610, Fla. Stat. (2012). The Defendant had four prior convictions at the time of his trial. Thus, the State could have impeached the Defendant based on these prior convictions and let the jury weigh his testimony, in light of these prior convictions, against the rest of the evidence presented at trial. Accordingly, the Defendant's contention that counsel gave misadvice about the State's ability to impeach him with his prior convictions is without merit.
>
> In addition, during trial the Court held a colloquy with the Defendant regarding his desire to testify. On the record, counsel indicated that he had advised the Defendant not to testify because he was unaware of what the substance of the Defendant's testimony would be since the Defendant refused to confide in him and that he informed the Defendant that he could inadvertently open the door to damaging testimony. Based on the Defendant's prior felonies and counsel's statements to the Court regarding his reservations about the Defendant testifying, counsel rendered adequate assistance in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690–91. Therefore, the Defendant fails to demonstrate that counsel was deficient.
>
> However, even if counsel was deficient, which the Court does not find, the Defendant fails to establish that he was prejudiced. During the colloquy, the Court also advised the Defendant that if he testified,

the State could ask him if he had previously been convicted of a felony and how many times. The Court indicated that the Defendant would have to acknowledge that he had four prior felonies. When asked if he wished to testify, the Defendant stated that it was in his best interest not to testify. Specifically, he said "I just feel it would jeopardize how they look at me. So that's why I won't testify." Accordingly, the Court notified the Defendant of how his prior convictions could be used to impeach him if he testified. The Defendant then decided it was in his best interest not to testify. Therefore, he fails to establish that he was prejudiced.

Lastly, the Defendant's claim that if he testified he would have been found guilty of trespass instead of burglary is speculative. Speculative claims cannot form the basis for postconviction relief. *See Spencer v. State*, 842 So. 2d 52, 63 (Fla. 2003).

(Exhibit 7 at 39–40) (citations omitted).

Mr. Newton's claim on this ground is refuted by the record. He had a chance to speak with his trial counsel about testifying, and thereafter the trial court had a discussion with him about his decision. After the court's explanation, Mr. Newton testified he thought it was in his best interest not to testify. The exchange between the court, counsel, and Mr. Newton went as follows:

| THE COURT: | We're back on the record. We took about 15 minutes to give Mr. Holloway a chance to talk to Mr. Newton about whether he chooses to testify or not. Has he made a decision, Mr. Holloway? |
|---|---|
| MR. HOLLOWAY: | . . . I am not sure if he is going to testify or not. |
| THE COURT: | All right. . . . I assume you went over with him or talked to him about the fact that if the State – if he has prior convictions, the State can impeach him with those? |
| MR. HOLLOWAY: | We have. And I've gone over that many times. |

22

| | |
|---|---|
| THE COURT: | What's the number, State, as far as prior convictions. |
| MS. ST. JOHN: | . . . Four. |
| THE COURT: | . . . So if he decides to testify, the State can ask him if he testifies, Have you ever been convicted of a felony, and the answer would believe (sic) yes. And how many times? Four. If he chooses not to testify, that's not something that would be brought before the jury, right? |
| MR. HOLLOWAY: | That is correct. |
| THE COURT: | Additionally, since there were so many other things that allegedly went on that day that we navigated around, depending on what he said on the witness stand, those things may or may not be something Ms. St. John could ask about on cross-examination, right? |
| MR. HOLLOWAY: | That is correct. |
| THE COURT: | All right. You shared that with him as well? |
| MR. HOLLOWAY: | I have shared with my client that I think it would be absolute folly, going (sic) gas on a fire that already exists in terms of evidence in this case if he were to take the stand, and not the least of which is the fact that he has not trusted me enough to confide with me as to the substance of his testimony. So he'll be taking the stand if he chooses without letting his attorney know in advance what he's going to say. |
| THE COURT: | . . . [Y]ou have to make a decision, Mr. Newton, about whether you choose to testify in this case. The State's rested their case. Your lawyer has no other witnesses. If you're going to testify, now is the time you have to make that decision. Do you understand that? |
| THE DEFENDANT: | Yes, sir. |

[Mr. Newton was placed under oath.]

THE COURT: Now is the time if you're going to make that decision. You've obviously talked to Mr. Holloway. It sounds like you haven't confided in him what your potential testimony would be, but you've talked to him about that. Have you made a decision about whether you choose to testify or not?

THE DEFENDANT: I made a decision because it seems like I'm being convicted of something – end up being convicted of something that didn't happen that way.

. . .

THE COURT: So is it your decision that you want to testify in the case?

THE DEFENDANT: Yeah.

THE COURT: You understand Mr. Holloway will ask you some questions and then the State will get up and be able to ask you some more questions about what happened, right?

THE DEFENDANT: Yes.

THE COURT: Depending on what you say happened that day, the State may be able to ask some questions about some things that you may not want the jury to hear about, *i.e.*, some stolen property that might have been in the car, that was found in the residence there. I don't know what you're going to say. So I don't know whether you're going to open the flood gates to allow them to ask you about those kinds of things or not, and neither does Mr. Holloway. Because apparently you haven't told him what you're going to say. But if you want to get on the stand and tell the jury what you want to tell them about what happened that day, you can. But you'll be subject to cross-examination. You'll have to acknowledge that you have four felony convictions. Do you understand that?

THE DEFENDANT: Yes.

| | |
|---|---|
| THE COURT: | Yes? |
| THE DEFENDANT: | Yes. I understand now. |
| THE COURT: | Is it your decision that you want to get on the stand and testify in this case? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | You do not want to testify? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | . . . [D]o you need to talk to Mr. Holloway some more about it? |
| THE DEFENDANT: | No, sir. |
| . . . | |
| THE COURT: | You don't. You've talked to him enough? |
| THE DEFENDANT: | Yes, I have. |
| THE COURT: | All right. So you've made a decision that you think it's in your best interest not to testify? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Is anybody threatening you or forcing you to get you to make that decision? |
| THE DEFENDANT: | No. |
| THE COURT: | You feel it's in your best interest not to testify and that's why you're making that decision; is that correct? |
| THE DEFENDANT: | I just feel it would jeopardize how they look at me. So that's why I won't testify. |

(Exhibit 2 at 338–43).

Under Florida law, any witness, including an accused, can be impeached by evidence of prior felonies. Fla. Stat. § 90.610(1). Here, Mr. Newton had four. The general rule for impeachment by prior convictions is that the State is restricted to asking a witness if he or she has been previously convicted of a crime, and if so, the number of times. *Fotopoulos v. State*, 608 So.2d 784, 791 (Fla. 1992) (citation omitted). Thus, unless answered untruthfully, the inquiry regarding prior convictions stops after a witness identifies if there are prior convictions and how many. *Id.* The prosecution is not permitted to inquire regarding the specifics.

In his petition, Mr. Newton claims he was advised by counsel not to testify because the "total substance of his prior convictions could be brought out by the State via impeachment." (Dkt. 1 at 10). Similarly, in his reply, Mr. Newton cites to *Rodriguez v. State*, 909 So. 2d 955 (Fla. 3d DCA 2005), for the proposition that it is error for counsel to advise a defendant that if he testified the prosecution would be able to place the details of his prior criminal history before the jury. (Dkt. 23 at 3). In *Rodriguez*, the defendant's claim of erroneous advice, along with defendant's claim that counsel threatened to withdraw if he took the stand, were not refuted by the record. 909 So. 2d at 956. But review of the trial transcript here reveals counsel's reason for advising against testifying related to Mr. Newton's failure to share with counsel what he intended to testify to. Because Mr. Newton had not disclosed to his

26

own counsel his anticipated testimony, trial counsel advised Mr. Newton not to testify because of a concern that additional damaging testimony may be elicited. This contradicts Mr. Newton's claim that he was advised not to testify because the prosecution would be able to question Mr. Newton as to the specifics of his prior convictions. However, even if trial counsel was deficient in communicating with Mr. Newton his reasons for advising against taking the stand, Mr. Newton fails to establish any prejudice. As discussed by the post-conviction court, the trial court informed Mr. Newton that the prosecution could ask him whether he had felony convictions and how many. After hearing that, Mr. Newton chose not to take the stand because of his concern for how the jury would perceive him after they learned he had four prior felony convictions. Thus, Mr. Newton decided it was in his own best interest not to testify. The state post-conviction court reasonably determined the facts and reasonably applied *Strickland* in rejecting this ground for ineffective assistance of counsel. 28 U.S.C. §§ 2254(d)(1), (d)(2).

## V.  Ground Five

Mr. Newton contends that his trial counsel rendered ineffective assistance by failing to object to the prosecutor's misconduct during closing arguments when the prosecutor characterized him as a "thief." (Dkt. 1 at 12). He argues that the State's case and credibility were bolstered due to counsel's failure to complain about this prosecutorial misconduct. Mr. Newton raised this issue in his 3.850 motion, (Exhibit

7 at 15–19), and the post-conviction court rejected it, stating:

> [T]he Defendant maintains that counsel failed to object to the prosecutor's improper remark during closing argument, characterizing the Defendant as a "thief." Specifically, the Defendant claims that there was no basis to characterize him as a thief because "[t]here was no property removed outside the house." The Defendant states that the comment bolstered the State's case and that counsel should have moved for a mistrial.

> When asserting that counsel was ineffective for failing to object to improper comments by a prosecutor, the defendant must demonstrate that the comments constitute reversible error. *Lugo v. State*, 2 So. 3d 1, 16 (Fla. 2008); *see also State v. Chattin*, 877 So. 2d 747, 749 (Fla. 2d DCA 2004) (stating that under the *Strickland* analysis, a defendant must show that "had his counsel preserved the issues, [the appellate court] likely would have reversed his conviction on direct appeal"). In order to determine whether improper remarks constitute reversible error, they should be reviewed within the context of the closing argument as a whole and considered cumulatively within the context of the entire record. *See Cochran v. State*, 711 So. 2d 1159 (Fla. 4th DCA 1998). Reversible error is not found when there is substantial additional evidence against the defendant. *See McArthur v. State*, 801 So. 2d 1037, 1041 (Fla. 5th DCA 2001) (finding no reversible error when the State made an improper closing argument bolstering the witness' testimony because there was sufficient additional evidence presented of the defendant's guilt).

> In this instance, when the alleged improper statement by the prosecutor is read in context, it is clear that the statement does not constitute reversible error. The prosecutor stated:

>> Element two. At the time of entering the structure, Corey Newton had the intent to commit an offense in that structure. Well, what's the offense? He's stealing stuff. He's a thief. It's a theft. They're moving TVs around. They're packing up jewelry. They're intending to steal. And again, folks, it doesn't matter who's loading it up. Corey Newton could be standing there with his hands in his pockets. They're intending on stealing. Who actually

touches the stuff doesn't matter.

> The prosecutor's comments do not constitute reversible error because there was significant evidence presented at trial to show the Defendant's guilt in the offense. The record reflects the Defendant was identified by a surveillance team in a white Toyota Corolla, he and the co-defendants were apprehended at the scene of the crime while trying to escape the police, a screwdriver was recovered at the scene and identified as the burglary tool, TVs were found near the front door, and a pillowcase of jewelry was discovered in the backyard of the residence. Further, before closing argument began, the jury was properly instructed that what the lawyers say is not evidence and should not be considered as evidence. Based on the extensive evidence against the Defendant presented at trial coupled with the Court's instruction pertaining to the attorneys' statements, the Defendant cannot contend that the prosecutor's comment caused the jury to find Defendant guilty. Any objection on the part of defense counsel would have proved meritless.

(Exhibit 7 at 40–41) (citations omitted). To establish that counsel was ineffective for allowing prosecutorial misconduct to occur without objection, Mr. Newton must demonstrate that the challenged conduct was both improper and prejudiced his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). An improper prosecutorial remark compels habeas corpus relief only if the remark is so egregious that the proceeding is rendered fundamentally unfair. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotations and citations omitted).

In his reply, Mr. Newton cites *Sandoval v. State*, 689 So. 2d 1258 (Fla. 3d

DCA 1997), for the general proposition that it is never proper to call defendants by names as an example of a criminal type. In *Sandoval*, however, the court found that the prosecutors' remarks in the context of the entire closing argument were not so egregious to undermine Sandoval's right to a fair trial. *Id.* at 1259. Similarly, here, the Court cannot say that the prosecution's singular "thief" reference in the context of the totality of the argument was so egregious as to deprive Mr. Newton of a fair trial. Moreover, as pointed out by the post-conviction court, the jury was instructed that counsel's remarks are not evidence. Given the amount of evidence presented against Mr. Newton at trial as thoroughly discussed in the post-conviction court's order, Mr. Newton cannot demonstrate that if his counsel had objected to the "thief" remark in closing, the jury would have reached any different result. Because Mr. Newton cannot show that the state court unreasonably applied *Strickland* or unreasonably determined the facts, his claim of ineffective assistance of counsel on this ground fails. 28 U.S.C. §§ 2254(d)(1), (d)(2).

## VI.    Ground Six

Mr. Newton contends that his trial counsel rendered ineffective assistance by failing to file a motion for new trial where the jury verdict of guilt on a lesser included offense was contrary to the uncharged principal theory relied on by the State. (Dkt. 1 at 13). This issue was raised in Mr. Newton's 3.850 motion for post-conviction relief. (Exhibit 7 at 20–21). In rejecting this claim, the post-conviction

court stated:

> The Defendant's claim is similar to his claim in Ground Three. As noted in that ground, there is no absolute requirement that the principal statute be charged on the information in order to have the jury instructed on the principal theory, rather such an instruction may be given upon the State presenting evidence that the accused aided or abetted in the commission of the charged crime. *Jacobs v, State*, 184 So. 2d 711, 715 (Fla. 1st DCA 1966); *see cf. Hampton v. State*, 336 So. 2d 378 (Fla. 1st DCA 1976) (holding that it is immaterial whether the information alleges that defendant committed the crime or was merely aiding and abetting in its commission, as long as proof establishes that he was guilty of either one of the acts proscribed by statute); *Watkins v. State*, 826 So. 2d 471, 474 (Fla. 1st DCA 2002) (holding that if an information charges a defendant with a substantive crime and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained).
>
> The State presented an abundance of evidence against the Defendant at trial. A surveillance team of law enforcement officers followed the Defendant to the burglarized residence, the Defendant was apprehended by officers while attempting to escape from the scene, a screwdriver was found in the vehicle that was later determined to be the burglary tool, a gun was found in the homeowner's toilet, a back window was broken, TVs were placed near the front of the house, and a pillowcase of jewelry was located in the backyard. . . . Therefore, because the State presented evidence that the Defendant aided or abetted in the crime, it is irrelevant that the information did not charge him as a principal.

(Exhibit 7 at 42–43). As indicated above, there was no error in the State not including the principal statute in the charging document. *See Hampton*, 336 So. 2d at 380 n.9. Thus, there can be no finding of ineffective assistance of counsel as any objection on this basis would have been overruled as meritless. *See Hitchcock*, 991 So. 2d at 361. Mr. Newton fails to meet his burden of proving that the state court either

unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. §§ 2254(d)(1), (d)(2).

## VII. Ground Seven

In his final ground, Mr. Newton argues that his trial counsel was ineffective in failing to inform the court that the HFO sentencing was discretionary, not mandatory. (Dkt. 1 at 15). Mr. Newton contends that he was sentenced to the maximum punishment due to the court's mistaken impression that it had no other choice under the law. Because counsel failed to inform the court that the statute was discretionary, Mr. Newton claims he has been deprived of his rights. He raised this issue in post-conviction proceedings, *see Exhibit* 7 at 22–24, and the court rejected same, stating:

> The Defendant and counsel received a Notice of Enhanced Penalty, dated June 13, 2013, which states "Although the State has determined that the Defendant qualifies for the above-listed enhanced penalty(s), the Court will determine which of the enhanced penalty(s) by which the Defendant qualifies and whether such enhanced penalty shall be imposed." This language clearly demonstrates that the Court has discretion in whether or not to impose the enhancement.

> In addition, at the sentencing hearing, the State presented the Court with the Defendant's prior convictions and recommended that he be sentenced to thirty years' imprisonment as a[n] HFO with a fifteen-year mandatory minimum as a PRR. In response, trial counsel requested that the Defendant be sentenced to fifteen years' imprisonment as a PRR. After hearing from the State, counsel, and the Defendant, the Court sentenced the Defendant to thirty years' imprisonment as a[n] HFO and with a fifteen-year mandatory minimum sentence as a PRR citing the Defendant's history of

burglaries and his concern for the community's safety as the reason for imposing the enhanced sentence. This was within the Court's discretion, which is apparent from the record.

(Exhibit 7 at 43) (citations omitted). Mr. Newton's claim that counsel was ineffective

in failing to inform the trial court that the HFO enhancement was discretionary is

refuted by the record. First, trial counsel specifically requested the court "to consider

the 15 years minimum mandatory for the PRR to be sufficient as a total sentence,

and whatever additional sentence on the burglary tools to be a concurrent sentence

. . ." (Exhibit 1, Transcript of Sentencing Hearing, at 180). Thus, counsel proposed

a sentence that was less than the enhancement. Second, as the post-conviction court

noted, Mr. Newton and his counsel received the Notice of Enhanced Penalty which,

by its language, indicated the court had discretion whether to impose an enhanced

sentence. Finally, the trial court explained the reasons, namely Mr. Newton's prior

history and felony convictions and the court's concern for the community's safety,

for imposing the enhanced sentence. At the sentencing hearing, the court explained:

> His history has been nothing but burglaries. There is nothing that suggests that it's going to be any different. As the State pointed out, he did this 40 days after his release from his last sentence. And it's clear from the history from the PSI that there is nothing to suggest that he wouldn't be committing another burglary within 40 days after this release, and so that release has to be as far as I can make it under the circumstances for the protection of the community.

(Exhibit 1, Transcript of Sentencing Hearing, at 186–87). Thus, the transcript reveals

the court was fully aware he had the discretion to impose a lesser sentence, but

because of Mr. Newton's history and the court's concerns for the safety of the community, the trial court imposed an enhanced sentence. Mr. Newton's counsel requested a lesser sentence, but this was rejected by the trial court under the circumstances. Thus, Mr. Newton fails to show how his counsel rendered ineffective assistance. Because Mr. Newton did not meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel, his claim on this ground fails. 28 U.S.C. §§ 2254(d)(1), (d)(2).

### Request for Hearing

In his reply, Mr. Newton requests an evidentiary hearing. (Dkt. 23 at 6). He argues a hearing is necessary to explore the adequacy of counsel's advice, particularly regarding his claim in ground four. His argument in ground four is refuted by the record and he fails to demonstrate the result would have been otherwise. This case warrants no evidentiary hearing because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003).

### Conclusion

As set forth above, Mr. Newton's claim of ineffective assistance of counsel fails. As to each ground, he fails to meet his burden of proving that the state court

either unreasonably applied *Strickland* or unreasonably determined the facts in rejecting the ground of ineffective assistance of counsel. 28 U.S.C. §§ 2254(d)(1), (d)(2).

Any of Mr. Newton's allegations not specifically addressed herein are without merit. *See Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (instructing "the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254").

It is therefore **ORDERED AND ADJUDGED** that:

1.     The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk shall enter judgment accordingly and close this case.

2.     A certificate of appealability (COA) is **DENIED** in this case because Mr. Newton cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because Mr. Newton is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on October 10, 2019.

                            **WILLIAM F. JUNG**
                            **UNITED STATES DISTRICT JUDGE**

Copies to: Petitioner *pro se*; Counsel of Record